In the District Court of the United States
For The District of South Carolina

BEAUFORT DIVISION

| | |
|---|---|
| Bennett Kirk Long,<br>  (SCDC # 267047),<br>                    Plaintiff,<br><br>vs.<br><br>Captain Garry Bryant, Anderson County<br>Detention Center; Wally Hampton, Nurse<br>at Anderson County Detention Center;<br>Karen Black, Nurse at Anderson County<br>Detention Center; Joey Preston, County<br>Administrator;<br><br>                    Defendants. | Civil Action No.  9:07-3881-GRA-GCK<br><br>**REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE** |

## **I.  INTRODUCTION**

The Plaintiff, Bennett Kirk Long ("Plaintiff" or "Long"), was an inmate housed in the Anderson County Detention Center ("ACDC") at the time he filed this action.[1]  Proceeding *pro se*, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 from the above-captioned defendants, Captain Barry Bryant ("Captain Bryant"), Wally Hampton, Nurse ("Nurse Hampton"), Karen Black, Nurse ("Nurse Black"), and Joey Preston, County Administrator ("Mr. Preston").

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.

---

[1]     Plaintiff currently is incarcerated in an institution of the South Carolina Department of Corrections.

Pending before this court is a motion for summary judgment filed on behalf of Captain Bryant, Nurse Hampton, and Mr. Preston.[2]  [18]  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the pro se complaint herein pursuant to the procedural provisions of 28 U.S.C. § 1915.  This review has been conducted in light of the following precedents:  *Neitzke v. Williams*, 490 U.S. 319, 324-25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.1978).

The complaint *sub judice* has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i), (ii).  A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact."  *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).  Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).  The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. *Denton*, 504 U.S. at 31.  In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor.  *Id*.

---

[2] The Defendants have informed the Court that there is no individual at the ACDC named Karen Black.  Karen Black has never been served.

This Court is required to liberally construe pro se documents, *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), holding them to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hughes v. Rowe*, 449 U.S. 9 (1980) (*per curiam*). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

On November 29, 2007,[3] Plaintiff filed his verified Complaint,[4] stating that he had been Hepatitis C positive for over twenty (20) years, and alleging that the Defendants had denied him medical treatment in connection with his illness on numerous occasions. He

---

[3] In the event that a limitations issue arises, the Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) (Prisoner's pleading was filed at the moment of delivery to prison authorities).

[4] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

asked for a multi-vitamin and was told that the ACDC did not provide those, but that a family member could bring them to ACDC; when his mother did so, she was told that Plaintiff could not have them.  Plaintiff also wanted to have his liver enzymes tested because he felt tired and was without an appetite, symptoms which he alleges are indicative of acute Hepatitis C.  In addition to his claims of inadequate medica care, Plaintiff sets forth numerous complaints regarding the conditions of confinement at ACDC:  (1) overcrowding because twenty-four (24) inmates were housed in a cell designed for twelve (12) inmates; (2) inadequate shower and toilet facilities because 24 inmates shared one shower and one toilet; (3) overcrowding which has led to assaults; (4) being placed in permanent housing with HIV positive inmates; (5) being potentially exposed to HIV when one of the HIV positive inmates cut his foot, bled "everywhere" and Plaintiff had to clean up the blood without proper cleaning supplies; (6) improper ventilation and lighting; (7) non-closing windows, which caused the cell to become "freezing" cold; (8) unsanitary laundry services that washed only uniforms, blankets, and towels, but not boxers, t-shirts, and socks; (9) unsanitary eating facilities because detainees had to eat close to the toilet, which smelled of urine; (10) unsanitary eating facilities because haircuts were given in the eating area, resulting in hair, blood, and skin falling on the tables; and (11) inadequate cleaning supplies.  Plaintiff asks that the jail be inspected and brought up to correct standards so that other detainees do not have to deal with the same things as those complained of; and Plaintiff also seeks compensation for his mental anguish suffered and the alleged deliberate indifference to his medical needs.

       On January 14, 2008, an answer was filed on behalf of the four Defendants, which set forth various affirmative defenses, and also asserted that Plaintiff had failed to obtain personal service on one or more of the Defendants, and had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act.  [11]  On February 22, 2008, a motion for summary judgment and a supporting memorandum with exhibits were filed on behalf of Captain Bryant, Nurse Hampton, and Administrator Preston.  [18]  On February 25,

2008, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the summary judgment procedure.[5]  [19]  On March 14, 2008, the Plaintiff filed his response in opposition to the Defendants' motion for summary judgment.  [21]  The Defendants filed a reply on March 17, 2008.  [22]

### IV.  SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences

---

[5] In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se* Plaintiffs must be advised that their failure to file responsive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### V.  DISCUSSION

#### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

As a threshold matter, the court will address whether Plaintiff has exhausted his available administrative remedies. *See Anderson v. XYZ Correctional Health Svcs.*, 407 F.3d 674 (4th Cir. 2005). The Prison Litigation Reform Act ("PLRA") requires that a prisoner

exhaust administrative remedies before filing a Section 1983 action concerning his confinement.  42 U.S.C.A. §1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson*, 407 F.3d at 677, and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).  A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove.  *Anderson*, 407 F.3d at 681.

Captain Bryant, a Captain at ACDC, has stated by Affidavit that there is a grievance system in place at ACDC which is designed to provide a method by which inmates may seek formal review of complaints relative to issues or conditions which directly affect the inmate.  The grievance system is a mechanism utilized by inmates to bring resolution to incidents which they perceive to negatively impact them or to identify situations which they believe to be inequitable.  The use of the grievance system allows ACDC and the inmate to jointly participate in the resolution of issues.  With respect to the grievance procedure, an inmate will file a grievance which will then be reviewed by the appropriate individual and the inmate will be provided with a response to his grievance.  Captain Bryant has further stated in his

Affidavit that he has access to inmate grievances and has reviewed grievances submitted by the Plaintiff.  Captain Bryant avers that the Plaintiff has failed to file a grievance in relation to the matters set forth in his Complaint, stating "I have reviewed the Plaintiff's records and cannot find that the Plaintiff has filed any grievance concerning the issues contained in his Complaint."  (Bryant Aff. [18-3] at ¶ 11).  The Defendants argue that Plaintiff failed to exhaust his available administrative remedies, and that the action should be dismissed.

In response, Plaintiff contends that he "filed numerous requests and/or grievances concerning my medical problem.  I even personally gave one to Detention officers." (Plaintiff's Affidavit [21] at p. 5, ¶ 13).  Thus, while the Plaintiff claims in his Affidavit that he filed one or more grievances concerning his medical care, he does not claim that he filed any grievances regarding the conditions of confinement about which he complains, and the undersigned finds that the only issue that may have been grieved concerns his medical care.

Because the affidavits in this case are in contradiction, the court will assume, for purposes of preparing this Report for the District Court, that the Plaintiff has exhausted his administrative remedies with respect to the alleged denial of medical care, and address this claim on the merits.

## B.  Plaintiff's Claim of Inadequate Medical Care

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime.  *See*, U.S. Const. Amend. VIII.  However, pretrial detainees, like the Plaintiff here, complaining of inadequate medical care proceed under the Fourteenth Amendment, rather than the Eighth Amendment.  "[T]he Supreme Court has . . . [observed] . . . that the Fourteenth Amendment rights of pre-trial detainees 'are at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

To prevail on a claim of inadequate medical care, a detainee must show acts or omissions sufficiently harmful to constitute deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). First, he must objectively show that the deprivation suffered or the injury inflicted was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Then, he must show that the defendant detention center medical personnel responsible for his care acted with deliberate indifference to his serious medical need. *Id*. These requirements go beyond even a showing of gross negligence or recklessness, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." *Id*. Basically, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. The official must know of and disregard an objectively serious condition, medical need, or risk of harm. A defendant is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982; *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In *Estelle v. Gamble*, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." *Id*. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988); *cf. Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (a state's responsibility to attend to the medical needs of prisoners does not ordinarily

clash with other equally important governmental responsibilities).  Likewise, constitutionally, jails are not required to furnish detainees the best of care, only reasonable care.  *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).

Petitioner does not set forth any evidence of acts or omissions sufficiently harmful to constitute deliberate indifference to serious medical needs, except to argue that he did not get the multi-vitamins allegedly brought to the ACDC by his mother, and that he did not receive the liver enzyme test he wanted.

Nurse Hampton, in his Affidavit, provided the court with an overview of the medical care available at ACDC.  According to Nurse Hampton, there are medical personnel present at ACDC Monday through Friday from 8 a.m. until 11 p.m. and from 8 a.m. to 4 p.m. on weekends.  Medical personnel are on call at all times and officers have the option to transport inmates to the emergency room when necessary and this is done on a regular basis.  At the ACDC, inmates will sign up to be seen in the medical department.  Except in emergency situations, a nurse will generally see the inmate and determine if there is a standing order in place that can resolve the inmate's medical concern.  If there is no standing order in place or if the nurse feels the inmate needs to see a doctor, an appointment will be scheduled with ACDC's doctor, who comes twice per week and sees inmates.  If an inmate wants to be seen by a doctor, he will put in a request.  The inmate may be seen the following day or it may be several days before he is seen by a doctor, depending on when he put in his requests and the nature of his complaint.  (Hampton Aff. [18-4] at ¶¶ 22-32).

Nurse Hampton reviewed Plaintiff's medical records and stated that while incarcerated in ACDC, Plaintiff was seen by a doctor several times for a swollen gland in his groin.  The doctor initially thought it might be an infection and prescribed antibiotics to Plaintiff.  (Hampton Aff. [18-4] at ¶¶ 42-44).  The antibiotics were not effective and the Plaintiff was then sent to AnMed Health for testing, but the test came back inconclusive. Then, the doctor had the Plaintiff tested for sexually transmitted diseases and these tests were

also negative.  The doctor was going to send the Plaintiff for a biopsy, but he was transferred to the South Carolina Department of Corrections before the biopsy could be completed. (Hampton Aff. [18-4] at ¶¶ 45-47).

Nurse Hampton stated that in his opinion, the Plaintiff was provided proper medical care while at ACDC.  Furthermore, Nurse Hampton was never deliberately indifferent to Plaintiff's medical needs.  (Hampton Aff. [18-4] at ¶¶ 57-58).

With respect to Plaintiff's specific allegations of inadequate medical care, Nurse Hampton stated that he remembered Plaintiff and that Plaintiff had informed medical staff that he had had Hepatitis C for approximately the last 20 years.  Nurse Hampton stated that though a multi-vitamin may be beneficial for any person, he was not aware of any study which has found that multi-vitamins have any particular benefit to individuals with Hepatitis C and to his knowledge, multi-vitamins are not required for individuals diagnosed with Hepatitis C.  Regardless, Nurse Hampton stated that he allows inmates with Hepatitis C to have a family member bring them multi-vitamins.  However, to his knowledge, no individual brought in any multi-vitamins for the Plaintiff while he was incarcerated at ACDC. (Hampton Aff. [18-4] at ¶¶ 34-39).

With respect to the liver enzyme test, it is well-settled that the Constitution "does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).  Even if Nurse Hampton wanted to order the test for Plaintiff, he did not have the authority to do so; only a doctor could order the test.  (Hampton Aff. [18-4] at ¶¶ 34-39). Furthermore, Plaintiff was seen by the ACDC physician on several occasions.  The doctor prescribed medications for the Plaintiff, sent him for several tests, and had ordered another test which was not completed because the Plaintiff was transferred to the South Carolina Department of Corrections.

Plaintiff's claim for alleged inadequate medical care is without merit.  In the context of alleged indifference to serious medical needs, in order to state a Section 1983 claim, the

plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). With respect to both the multi-vitamins and the liver enzyme test, Plaintiff has not alleged any injury whatsoever, and he has not objectively show that the deprivations suffered were sufficiently serious. Furthermore, he has failed to show deliberate indifference on the part of Nurse Hampton. It is well-established law that for an individual to be liable under 42 U.S.C. § 1983, the official charged must be affirmatively shown to have acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). The Plaintiff has failed to point to any affirmative act on the part of Nurse Hampton that resulted in a deprivation of his rights. Furthermore, while Plaintiff may have disagreed with the treatment provided, a disagreement with prison health care providers fails to state a claim under Section 1983. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) ("[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a §1983 claim unless exceptional circumstances are alleged."). The Plaintiff has failed to establish a serious medical need, or any deliberate indifference on the part of Nurse Hampton.

Likewise, Plaintiff has failed to state a claim for deliberate indifference and denial of appropriate medical care with respect to Captain Bryant. The Fourth Circuit has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison doctors' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Furthermore, a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g., Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978). However, the Plaintiff's complaint sets forth no evidence of personal involvement on the part of Captain Bryant, and therefore the Plaintiff has not stated a claim against him.

Finally, Plaintiff has failed to state any claims under §1983 against Mr. Preston, who has stated in his affidavit that he is the County Director for Anderson County. Mr. Preston does not work in the ACDC and to his knowledge has never had any type of interaction with the Plaintiff. The Plaintiff has failed to point to any action taken by Mr. Preston and has failed to even mention him by name in his Complaint. Therefore the Plaintiff has not stated a claim against him.

### C. Plaintiff's Claims for Injunctive Relief are Moot Because he is no Longer Incarcerated at the ACDC

Because the Plaintiff has been transferred from ACDC, Plaintiff's claims for injunctive relief are moot.[6] *See, e.g., Scurry v. Middleton*, 2007 WL 1068248 at *3 (D.S.C. April 2, 2007) (MBS-BM) (upon the plaintiff's release from the detention center, the plaintiff's request for injunctive and/or declaratory relief was moot); *citing Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); *Taylors v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (holding that prisoner's transfer mooted a request for declaratory and injunctive relief); *cf. Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Buie v. Jones*, 717 F.2d 925, 927-929 (4th Cir. 1983).

---

[6] See Plaintiff's change of address filed with the Clerk of Court. [17]

## **RECOMMENDATION**

Based upon the foregoing, it is recommended that the Defendants' motion for summary judgment **[18] should be granted.**

*[signature]*
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

June 13, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).